Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

POSCO DAEWOO AMERICA CORP.,

*Plaintiff,*

v.

ALLNEX USA, INC. and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

*Defendants.*

Civil Action No. 17-483

**OPINION**

**John Michael Vazquez, U.S.D.J.**

The current matter, which concerns insurance coverage, comes before the Court on Defendant Travelers Casualty and Surety Company of America's ("Travelers") motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 32. Plaintiff Posco Daewoo America Corp. ("Plaintiff" or "Daewoo") opposed Travelers' motion (D.E. 35), and Travelers filed a brief in reply (D.E. 39); Defendant Allnex USA, Inc. ("Allnex") also filed a letter brief (D.E. 36).[1] The Court reviewed all the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Travelers' motion is **GRANTED**.

---

[1] In this Opinion, Travelers' motion to dismiss (D.E. 32) will be referred to as "Travelers MTD." Allnex's letter brief in opposition (D.E. 36) will be referred to as "Allnex Opp." and Daewoo's brief in opposition (D.E. 35) will be referred to as "Daewoo Opp." Travelers' reply brief (D.E. 39) will be referred to as "Travelers Rep."

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The underlying matter between Daewoo and Allnex concerns who bears the risk of loss for stolen funds. As to Daewoo and Travelers, the issue is whether there is potential insurance coverage for the loss. Because this is Travelers' second motion to dismiss and the parties are familiar with the facts and insurance policy language at issue, the Court incorporates the factual background from its first motion to dismiss opinion (the "MTD Opinion," D.E. 26), supplements the background in light of the new allegations in the Amended Complaint (the "FAC," D.E. 28), and provides a brief overview of the parties and claims.

Plaintiff is a corporation that, among other things, imports and exports chemicals. Defendant Allnex is in the business of supplying specialty chemicals. Plaintiff supplied Allnex with products for which Allnex owed payment. In early 2016, an impostor posing as an employee of Plaintiff's accounts receivable department sent emails to an employee of Allnex. FAC ¶¶ 2, 4, 8. Specifically, Plaintiff alleges that the impostor "hacked Daewoo's computer system to send fraudulent emails to Allnex requesting wire payments to four separate [Wells Fargo] bank accounts to satisfy outstanding receivables owed by Allnex to Daewoo." *Id.* ¶¶ 8, 9. Daewoo does not bank at Wells Fargo. *Id.* ¶ 8. Allnex, without confirming the authenticity of the impostor's email or of the four Wells Fargo bank accounts, wired three separate payments to the Wells Fargo

---

[2] The factual background is taken from Plaintiff Daewoo's Amended Complaint (D.E. 28), as well as from the Wrap and Crime Insurance Policy (the "Policy"), No. 106053220, (Travelers MTD, Ex. A; D.E. 32-3). When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the Amended Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In addition, the Court may consider any document integral to or relied upon in the Amended Complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In this motion, the Policy is referenced in the Amended Complaint, and all parties agree that it is authentic and critical to deciding the current motion.

accounts on February 11, 2016, March 22, 2016, and April 1, 2016. The wired payments totaled $630,058. *Id.* ¶ 10.

After the fraud was discovered, Allnex recovered $262,444 of the stolen $630,058. *Id.* ¶ 13. The impostor apparently transferred the rest of the money, $367,613.46, from the Wells Fargo accounts to accounts in Shanghai, China. *Id.* Daewoo alleges that Allnex owes it the remaining $367,613.46 to satisfy the original outstanding receivables. Allnex disagrees, contending that the unrecovered wire payments to the impostor satisfy the balance it owed to Daewoo.[3] *Id.* ¶ 14.

Plaintiff contends that Travelers should indemnify it for the losses caused by the impostor, pursuant to Plaintiff's insurance policy with Travelers. *Id.* ¶¶ 25, 44; Travelers MTD, Ex. A at 1; D.E. 32-3. The parties do contest the validity of the Policy during the relevant time period. Under the Policy, Travelers insured Plaintiff for certain losses resulting from criminal activity. Relevant here, the Policy provided Daewoo with coverage for loss incurred due to computer crime. The Policy language at issue reads as follows:

> F. Computer Crime
>
> 1. Computer Fraud
>    The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money, Securities,** and **Other Property** directly caused by **Computer Fraud**.

---

[3] Allnex's letter brief takes issue with Travelers' statement that Daewoo has "legally enforceable claims against Allnex," which Travelers made in its brief in support of the instant motion. Allnex Opp. at 2. To that end, Allnex contends that "Travelers' motion to dismiss Daewoo's coverage claim is not the appropriate vehicle to determine whether [A]llnex has any liability to Daewoo." *Id.* at 4. Whether Allnex is liable to Daewoo is the critical issue between those two parties. Accordingly, Travelers' characterization of the matter in this motion to dismiss is not binding on Allnex.

Travelers MTD, Ex. A at 3 (emphasis in original). All bolded terms are separately defined in the Policy and "Other Property" means any tangible property other than **Money** and **Securities** that had intrinsic value. *Id.* at 12 (emphasis in original).

Plaintiff alleges that "there is no legitimate question that 'computer fraud,' as defined by the Policy, set into operation a chain of causation that resulted in a loss to Daewoo." FAC ¶ 39. Daewoo asserts that the impostor "used a computer to cause the fraudulent transfer of hundreds of thousands of dollars belonging to Daewoo to other parties." *Id.* To recover its claimed loss, Plaintiff submitted an insurance claim to Travelers; Travelers denied coverage. Daewoo alleges Travelers' decision to deny coverage was improper. FAC ¶¶ 43-46.

On December 15, 2016, Daewoo filed a Complaint against Allnex and Travelers in the Superior Court of New Jersey. D.E. 1. Travelers removed the case to federal court on January 24, 2017. *Id.* Travelers then moved to dismiss this action pursuant to Rule 12(b)(6). D.E. 6. On October 31, 2017, this Court granted Travelers' motion to dismiss. D.E. 26, 27.

In Travelers' first motion to dismiss, the parties raised a number of arguments regarding the interpretation of specific language in the Policy. Ultimately, the Court concluded that the Policy's "Ownership of Property; Interests Covered" provision was dispositive, and granted the motion because Plaintiff failed to plausibly plead that it owned the wired payments. MTD Opinion at 8-11. "Own" is not defined in the policy. Therefore, the Court was required to use the "plain, ordinary meaning" of "own" when interpreting the Policy provision, and to "interpret the contract to comport with the reasonable expectations of the insured." *Id.* at 11-12 (quoting *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001)). While Travelers and Daewoo each maintained that different definitions of "own" were applicable, the Court did not find either parties' argument persuasive. *Id.* at 12 n.11. Instead, the Court determined that Black's Law Dictionary was

4

instructive. Using Black's Law Dictionary, the Court defined "own" as "to rightfully have or possess as property; to have legal title to." *Id.* at 12. Because Daewoo failed to pled that it rightfully had, possessed, or had legal title to the money at issue, the Court concluded that Daewoo failed to state a claim as to Travelers. *Id.* at 12, 14. Accordingly, the Court granted Travelers' motion to dismiss without prejudice and granted Plaintiff leave to file an amended complaint. D.E. 27.

Plaintiff filed the FAC on December 12, 2017. D.E. 31. In the FAC, Daewoo pleads that it owned the funds at issue pursuant to the Merriam-Webster Dictionary's definition of "own." FAC ¶ 40. Plaintiff also pleads that once the money was placed into the "funds transfer system . . . Daewoo would have had the right and ability to impose a constructive trust over the funds." *Id.* ¶ 41. In addition, the lost funds "represented an account receivable of Daewoo, which is 'tangible property' of Daewoo within the meaning of the Policy." *Id.* ¶ 42. Daewoo also alleges that "*Allnex* is taking the position that Allnex's unrecovered wire transfers satisfy the outstanding balance owed to Daewoo, on the theory that Daewoo 'owns' such funds." *Id.* ¶ 14 (emphasis added). Finally, the FAC includes a new allegation that the impostor hacked into Daewoo's computer system in order to send the fraudulent emails to Allnex. *Id.* ¶ 8.

Travelers filed this motion in response, arguing that Plaintiff fails to sufficiently plead any new facts demonstrating that it owned the funds at issue and, therefore, still does not satisfy the ownership requirement in the Policy.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*,

5

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. In deciding a motion to dismiss, the Court may also consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quotation & emphasis omitted)). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. <u>LEGAL ANALYSIS</u>

As noted, in the MTD Opinion the Court used Black's Law Dictionary to define "own," and granted Plaintiff leave to file an amended pleading to assert sufficient facts establishing that it owned the funds at issue. The FAC, among other things, alleges that an arguably broader Merriam-

Webster Dictionary definition of "own" should actually apply. FAC ¶¶ 28, 40. Thus, Daewoo's argument in opposition to Travelers' motion to dismiss - that the Court should use a different definition of own - is akin to a motion for reconsideration. Daewoo is, in effect, requesting that the Court reconsider the definition of own.

Daewoo, however, did not make a motion for reconsideration pursuant to Local Civil Rule 7.1(i). A motion for reconsideration is viable when one of three scenarios is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Carmichael v. Everson*, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004) (citations omitted). A motion for reconsideration, however, does not entitle a party to a second bite at the apple. Therefore, a motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, at *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988). Granting a motion for reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) (citations omitted). In this instance, there is no intervening change in the controlling law, and Plaintiff fails to include any new relevant evidence in the FAC, argue that there was a clear error of law, or maintain that the Court's decision created manifest injustice. Thus, Plaintiff's argument that the Court should have adopted a broader definition of "own" (Daewoo Opp. at 6-7) is an improper second bite at the apple.

In addition, a motion for reconsideration cannot be used to raise a new argument that could have been raised in the initial motion. *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

7

In the initial motion, both parties asserted definitions of "own" that the Court rejected. MTD Opinion at 12 n.11. Daewoo could have clearly raised its current definition of own in the prior motion but failed to do so.

Moreover, the Court's definition of "own" is sound. New Jersey law[4] states that "words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. When interpretation is required, "courts interpret the contract to comport with the reasonable expectations of the insured . . . ." *Id.* In addition, courts may look to a dictionary definition to determine the plain meaning of an undefined term. *See Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 360 (3d Cir. 2014) (finding that "dictionaries are the customary reference source that a reasonable person in the position of a party to a contract would use to ascertain the ordinary meaning of words not defined in the contract" (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006))). Plaintiff does not appear to disagree with the Court's decision to use a dictionary to define "own." Instead, Plaintiff criticizes the specific dictionary that the Court used to define the term. Daewoo Opp. at 6-7. But except for the fact that Plaintiff does not like the particular definition applied by the Court, Plaintiff fails to provide the Court with any explanation as to why the use of Black's Law Dictionary was improper. In fact, courts frequently use Black's Law Dictionary to determine the plain and ordinary meaning of undefined terms in insurance policies. *See, e.g., Dougherty v. Allstate Prop. & Cas. Ins. Co.*, 681 F. App'x 112, 116

---

[4] This matter is before the Court on diversity jurisdiction. As a result, the Court must interpret the contract language in the Policy under the substantive law of the state whose laws govern the action. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties continue to assume that New Jersey substantive law applies, so the Court will also continue to apply the same. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

(3d Cir. 2017) (using Black's Law Dictionary to provide meaning to an undefined term); *Hussey Copper, Ltd. v. Arrowood Idem. Co.*, 391 F. App'x 207, 209-10 (3d Cir. 2010) (same); *Trademark Plastics Corp. v. Hartford Fire Ins. Co.*, No. 13-5039, 2015 WL 1472305, at *5 (D.N.J. Mar. 31, 2015) (same). The Court does not see any error in the definition it employed.

Daewoo also argues that it nevertheless owned the stolen funds because *Allnex* is taking the position that it does not owe Daewoo any additional money because Daewoo "owns" such funds. FAC ¶ 14. Allnex's characterization of who owns the funds, however, has no impact on whether the Policy actually covers the alleged loss here. Allnex is not a party to the insurance contract between Daewoo and Travelers. Moreover, it is not lost on the Court that Allnex has every reason to advocate that the losses in the case are covered by the Policy.

The FAC also alleges that Daewoo owned an account receivable, "which is 'tangible property' of Daewoo within the meaning of the Policy." FAC ¶ 42. Daewoo argues that an account receivable is a "tangible asset" for "accounting purposes" so that it is also "tangible property" under the Policy. Daewoo MTD at 10-16. Travelers argues that the FAC must be dismissed because an account receivable is an intangible asset. Travelers MTD at 10-11.

The Policy only covers property that Allnex owned or leased, held for others, or for which the Allnex was "legally liable."[5] Travelers MTD, Ex. A at 17. Under the Policy, "other property" is "any tangible property other than Money and Securities that had intrinsic value." *Id.* at 12 (emphasis omitted). Even if the Court were to conclude that Daewoo's account receivable was tangible property, the Policy still would not cover the alleged loss because Daewoo does not allege that its account receivable was stolen or improperly taken.

---

[5] The parties do not appear to dispute the Court's prior conclusion that the leasing, held for others, and legally liable categories were not applicable here. MTD Opinion at 11.

The Court also disagrees with Plaintiff's argument that its account receivable is tangible property because such receivable is considered a tangible asset for accounting purposes. The dispute concerns insurance coverage under the Policy; it is not an accounting matter. Moreover, the Policy does not indicate that terms are to be given the same meaning as they would for accounting purposes. Finally, none of the cases cited by Plaintiff address the interpretation of "tangible property" in an insurance contract. For example, *In re Armour's Estate*, 11 N.J. 257, 276 (1953), addressed testamentary intent and noted that the *testator* referred to accounts receivable as part of "current assets." Current assets, in turn, was part of "tangible assets." *Id.* at 276. *Armour* addressed a testator's definition, not legal or accounting definition. Moreover, certain New Jersey courts have found that accounts receivable constitute intangible property. *See, e.g., J.B. Williams Co. v. Glaser*, 114 N.J. Super. 156, 161 (App. Div. 1971) ("It is well established that accounts receivable and other intangible personal property may acquire a situs for purposes of taxation at some place other than the technical domicile of the owner."); *M. Rutkin Elec. Supply Co v. Burdette Elec., Inc.*, 98 N.J. Super 378, 383 (Ch. Div. 1968) (observing that an account receivable "is an intangible" for Uniform Commercial Code purposes).

Finally, the FAC states that once Allnex placed the funds into the funds transfer system "Daewoo would have had the right and ability to impose a constructive trust over the funds." FAC ¶ 41. Daewoo indicates that this supports its claim to ownership over the funds. Daewoo Opp. at 19. Daewoo's constructive trust argument is unavailing to establish that Daewoo has ever owned the funds. Constructive trusts are an equitable remedy used to prevent unjust enrichment or fraud. A constructive trust can be imposed when "the holder of the legal title may not in good conscience retain the beneficial interest" of the property. *Carr v. Carr*, 120 N.J. 336, 351 (1990); *see also Hill v. Warner, Berman & Spitz, P.A.*, 197 N.J. Super. 152, 168 (App. Div. 1984) ("A constructive

trust is a relationship with respect to property subjecting the person whom the title to property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property."). A constructive trust is an equitable remedy which courts may compel following adjudication; the remedy does not mean that Daewoo owned the funds in the first instance.

In sum, the Court previously determined that Daewoo did not sufficiently plead that it owned the funds at issue and the FAC is likewise inadequate. Consequently, Daewoo fails to plausibly assert that Travelers must, pursuant to the Policy, cover Daewoo for loses attributable to the impostor. Travelers' motion to dismiss is therefore granted. In addition, when granting a motion to dismiss, a court must decide whether to dismiss with or without prejudice, the latter of which provides a plaintiff with opportunity to amend. Dismissal with prejudice is appropriate if an amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004). Here, Travelers is dismissed as a Defendant with prejudice because any attempt to amend would be futile.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Travelers' motion to dismiss with prejudice and Travelers is dismissed as a Defendant in this matter. An appropriate Order accompanies this opinion.

Dated: November 19, 2018

_John Michael Vazquez, U.S.D.J._